IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DORSEY TAYLOR, | ) | |
| | ) | 8:04CV161 |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| HAROLD W. CLARKE, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court for decision on the Petition for Writ of Habeas Corpus ("§ 2254 petition") filed pursuant to 28 U.S.C. § 2254 by Dorsey Taylor, a prisoner in the custody of the Nebraska Department of Correctional Services. Taylor alleges violations of his constitutional rights in connection with his conviction and sentence in the District Court of Douglas County, Nebraska, on or about October 18, 1999, for second-degree murder, use of a deadly weapon to commit a felony, and first-degree assault.

## *I. TAYLOR'S § 2254 PETITION*

In his § 2254 petition, Taylor asserts the following claims:

*Claim No. 1:* The district court abused its discretion and committed judicial misconduct by denying Taylor's Motion for Discharge, thereby depriving him of due process and equal protection guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution;

*Claim No. 2:* Taylor was denied his right to a speedy trial in violation of his rights to due process and equal protection under the Fifth, Sixth, and Fourteenth

Amendments to the U.S. Constitution;

*Claim No. 3:* Taylor was convicted on the basis of an invalid no-contest plea, which he did not knowingly, voluntarily, and intelligently enter, thereby depriving Taylor of his rights to due process and equal protection under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution;

*Claim No. 4:* The district court committed plain error and/or structural error by denying the Motion to Withdraw filed by Taylor's attorney, thereby depriving Taylor of due process and equal protection guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution; and

*Claim No. 5:* Taylor received ineffective assistance of appellate counsel when his attorney refused and/or neglected to raise various issues on direct appeal, thereby depriving Taylor of due process and equal protection guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and the Nebraska Constitution (and, construed liberally, his rights under the Sixth Amendment to the U.S. Constitution).

In response to Taylor's petition, the respondent has filed an Answer (filing 10) acknowledging that the § 2254 petition is timely and asserting the affirmative defense of procedural default as to Claims 1 through 4. Further, the respondent denies all of Taylor's claims on the merits.

## *II. ANALYSIS OF CLAIMS*

### *A. Speedy Trial (Claims 1 & 2)*

The State filed an Information against Taylor on August 4, 1997, and Taylor filed a notice of intent to file an insanity defense on August 11, 1997. (Filing 11, Ex. 2, Proceeding Before District Court on 9/3/97.) This triggered the State's right,

pursuant to Neb. Rev. Stat. § 29-2203,[1] to move for an examination of the defendant to inquire into his sanity at the time the alleged offense was committed. The district court sustained the State's motion for a psychological examination of Taylor on September 3, 1997, and the report was received by the district court at a hearing on January 20, 1998. (Filing 11, Ex. 2, Proceeding Before District Court on 1/20/98; Filing 11, Ex. 13, District Court Docket Sheet.) During that hearing, the defendant changed his plea to not guilty by reason of insanity. He also requested, and received, permission to conduct a second evaluation to determine his competency to stand trial and participate in his own defense and his sanity at the time the offenses were allegedly committed.[2] (Filing 11, Ex. 2, Proceeding Before District Court on 1/20/98; Filing 11, Ex. 13, District Court Docket Sheet.)

During a hearing in the district court on February 9, 1998, the court ordered that Dr. Bruce Gutnik conduct the second psychological evaluation within 60 days. (Filing 11, Ex. 2, Proceeding Before District Court on 2/9/98.) This deadline was later extended into April 1998 because of the voluminous nature of Taylor's mental health records. (Filing 11, Ex. 2, Proceeding Before District Court on 3/13/98; Filing 11, Ex. 13, District Court Docket Sheet.)

In a hearing on April 30, 1998, in the Douglas County District Court, the court

---

[1] Neb. Rev. Stat. Ann. § 29-2203 (LexisNexis 2003) requires that criminal defendants give notice of their intent to defend their prosecution on the ground that he or she is not responsible by reason of insanity. Upon the filing of such notice and upon motion by the state, the court may order that the defendant be examined to inquire into his or her sanity at the time the alleged offense was committed.

[2] See Neb. Rev. Stat. Ann. § 29-1823 (LexisNexis 2003) (if at any time prior to trial it appears the accused has become mentally incompetent to stand trial and such disability is called to the district court's attention by the prosecution or defense, the district judge may order medical, psychiatric, or psychological examination in order to determine whether the accused is competent to stand trial).

3

noted that it had received Dr. Gutnik's evaluation dated April 2, 1998, but the evaluation was not received into evidence, and a determination of Taylor's competency was not requested or made at that time. Trial was set for May 11, 1998. (Filing 11, Ex. 2, Proceeding Before District Court on 4/30/98.)

Taylor asserted his right to a speedy trial by filing a Motion for Discharge in the district court on May 1, 1998. (Filing 11, Ex. 13.) Trial did not occur on May 11, as scheduled, and the district court denied Taylor's Motion for Discharge on June 17, 1998. The Nebraska Supreme Court summarily affirmed the district court's denial of the Motion for Discharge on March 31, 1999.[3] (Filing 11, Ex. 14.) In his § 2254 petition, Taylor asserts that the denial of a speedy trial and denial of his Motion for Discharge violated his federal and state constitutional rights.

### *1. Procedural Default*

The respondent contends that Taylor procedurally defaulted his speedy-trial claims by failing to raise them in a constitutional context before the state appellate court, arguing that "at no point during [the petitioner's] state court appeals did Taylor assign or argue in his briefs his current claim that the district court denied his constitutional rights when it denied his motion for discharge." (Filing 24, at 7.)

Before seeking a federal writ of habeas corpus, a state prisoner

---

[3]Thereafter, the district court considered defense counsel's motion to withdraw on June 29, 1999; another motion by the defendant to determine the defendant's competency to stand trial in light of the perceived deterioration of Taylor's mental state on July 19, 1999; and whether Taylor was competent to stand trial and another motion by defense counsel to withdraw on October 4, 1999. (Filing 11, Ex. 2, Proceedings Before District Court on 2/29/99, 7/19/99, 10/4/99.) Taylor entered a plea of no contest to second-degree murder, use of a deadly weapon to commit a felony, and first-degree assault on October 18, 1999. (Filing 11, Ex. 3, Proceeding Before District Court on 10/18/99.)

> must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citations and quotation marks omitted).

Contrary to the respondent's assertion, Taylor's first argument on direct appeal was that "THE STATE VIOLATED APPELLANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL." (Filing 11, Ex. 4, at 3 (emphasis added)). The first sentence of that argument cites both the Nebraska Constitution and the Sixth and Fourteenth Amendments to the U.S. Constitution, and the second sentence refers to Barker v. Wingo, 407 U.S. 514 (1972), the very decision cited by the respondent regarding the federal constitutional right to a speedy trial. This was enough to fairly present Taylor's federal speedy-trial claim to the Nebraska appellate courts. Baldwin, 541 U.S. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Thus, Taylor has not procedurally defaulted his § 2254 claims relating to his federal right to a speedy trial, thereby requiring an analysis of the merits of these claims.

### *2. Merits*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review, both as to the

5

facts and the law. See 28 U.S.C. § 2254(d).[4] Sometimes, however, it is difficult to determine what the state courts did and therefore difficult to determine what standard of review is appropriate. See, e.g., Pfau v. Ault, 409 F.3d 933, 939 (8th Cir. 2005). Such is the case here, where the Nebraska Supreme Court summarily affirmed the district court's denial of Taylor's Motion for Discharge without explanation. In these circumstances, a court may choose "to avoid entanglement" with state procedural questions and apply a de novo standard of review. Id.

Taylor argues that his federal constitutional right to a speedy trial was violated because (1) the Information was filed against him on August 4, 1997, but the district court set his trial for May 11, 1998, instead of April 16 or 17, 1998; and (2) the district court denied his Motion to Discharge on June 17, 1998. (Filing 1, at 12.)

> The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992); United States v. Sprouts, 282 F.3d 1037, 1041 (8th Cir. 2002). "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial'

---

[4]28 U.S.C. § 2254(d) states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

> delay." Doggett, 505 U.S. at 651-52, 112 S. Ct. 2686. This generally occurs if the delay is at least one year long. Id. at 652 n.1, 112 S. Ct. 2686. If the defendant makes this showing, then the court conducts the speedy trial analysis by weighing four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Id. at 651-52, 112 S. Ct. 2686; Sprouts, 282 F.3d at 1042-43.

United States v. Brown, 325 F.3d 1032, 1034 (8th Cir. 2003). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530.

Here, Taylor has not shown that the nine-month time frame between the filing of the Information against him and the trial setting—the majority of which was spent determining, pursuant to Nebraska statute, Taylor's competency to stand trial and his sanity or insanity at the time the offenses were committed because of the defense Taylor chose to assert—was a presumptively prejudicial delay that even triggers the speedy trial analysis set forth above. Even if Taylor had shown that this nine-month period was presumptively prejudicial, I would conclude that the four speedy-trial factors (length of delay, reason for delay, defendant's assertion of his right, and prejudice to defendant) clearly weigh in favor of the State.

Therefore, Claims 1 and 2 of Taylor's § 2254 petition must be denied.

### *B. Plea (Claim 3)*

Taylor next claims that he was convicted on the basis of an invalid no-contest plea because the plea was not knowingly, voluntarily, and intelligently made. The State contends that this claim is procedurally defaulted because it was not raised and argued before the highest court of the State of Nebraska, which, on direct appeal, only

7

considered whether the district court imposed an excessive sentence—Taylor's sole assignment of error. (Filing 10, at 9; Filing 11, Exs. 6-8, 15-16; Filing 24, at 14.) Taylor argues that his ineffective appellate counsel caused this procedural default by failing to raise the invalid-plea claim in Taylor's direct appeal. (Filing 25, at 2-3.)

"In order for deficient trial work to constitute the kind of 'cause' that would excuse a procedural bar, counsel must have been constitutionally ineffective" under Strickland v. Washington, 466 U.S. 668, 687-88 (1984) (to constitute ineffective assistance of counsel under the Sixth Amendment, counsel's performance must have fallen below an objective standard of reasonableness that prejudiced the defendant). Clemons v. Luebbers, 381 F.3d 744, 752 (8th Cir. 2004). Further, the petitioner must have independently presented his ineffective-assistance claim to the state court for adjudication. Id.

Taylor presented, and the state court addressed, his claim that appellate counsel was ineffective because counsel failed to raise on direct appeal the issue that "Taylor's plea of no contest was not made knowingly, willingly and intelligently" because counsel "mislead him on the viability of an insanity defense and because Taylor was under the influence of mind[-]altering medication at the time he entered his plea." (Filing 11, Ex. 12, at 7-8 (Nebraska Court of Appeals Memorandum Opinion affirming lower court's denial of postconviction relief); see also Filing 11, Ex. 20 (Appellate Docket Sheet showing denial by Nebraska Supreme Court of Taylor's Petition for Further Review).) Thus, the issue becomes whether Taylor's appellate counsel was ineffective within the meaning of Strickland when he failed to raise the validity of Taylor's plea as an issue on direct appeal, so as to excuse Taylor's procedural default of Claim 3.

Taylor was evaluated three times in an effort to determine his competency to stand trial and whether he was insane at the time of the alleged offenses. The first report, received into evidence by the district court on January 20, 1998, noted that

8

while Taylor had an extensive history of inpatient psychiatric admissions since 1970, at the time of the alleged offenses it was "questionable whether he displayed any psychotic behavior during the day in question or immediately prior to the alleged shooting" and that Taylor's demeanor after his arrest did not include "significant symptoms indicative of psychotic symptomatology." The report further stated that Taylor understood the nature and consequences of his behavior at the time of the alleged offenses. (Filing 11, Ex. 2, Proceeding Before District Court on 10/4/99, Ex. 1.)

Taylor's second diagnostic evaluation—conducted at defense counsel's request in April 1998 by Dr. Bruce Gutnik, M.D.—stated, "Mr. Taylor appears marginally competent to stand trial," but the question of sanity or insanity at the time of the alleged offense "is more difficult." At the time the report was written, Taylor did not have a "clear recollection of the alleged crime," making it "impossible to determine if Mr. Taylor was or was not sane at the time of the alleged crime." While Dr. Gutnik concluded that Taylor "was psychotic at the time of the alleged crime," Taylor's "sanity or insanity at the exact moment of the crime can not be determined by myself or, in my opinion, others." (Filing 11, Ex. 1, Proceeding Before District Court on 4/30/98 & Ex. 11.)

Taylor's third and final evaluation, performed in August 1999, resulted in a conclusion that Taylor had the "requisite capacities to proceed with the legal process" and that he was competent to stand trial. (Filing 11, Ex. 2, Hearing Before District Court on 10/18/99 & Ex. 12.)

In light of the indefinite conclusions expressed in these reports about whether Taylor was sane at the time he committed the crimes, Taylor's trial counsel properly and reasonably—after extended discussion with Taylor—advised him to consider the State's plea agreement rather than pursue an insanity defense. Further, there is no evidence whatsoever to support Taylor's allegation that the second diagnostic report

9

was somehow "altered" to state that Taylor "was sane at the time of the crime." (Filing 1, § 2254 Petition, at 14 (emphasis in original).)

Taylor next alleges that his colloquy with the court during the plea hearing establishes that he was "using mind[-]altering medication" that affected the validity of his plea. Taylor claims that in a drug-induced "impaired" and "confused" state, he erroneously told the court that he was taking prescription medication, "but not this morning," when in reality Taylor "had, in fact, taken prescription medication the day of the plea." (Id. at 18.)

First, this alleged colloquy never occurred. Second, there is no indication in the record that Taylor was confused or impaired due to medication during the plea hearing, as evidenced by this exchange between Taylor and the court:

> THE COURT: I will ask you to answer yes or no. Have you ever been treated for any mental illness or, to your knowledge, do you now suffer from any mental or emotional disability?
> THE DEFENDANT: Yes, I have.
> THE COURT: Yes? And what mental or emotional disability is it that you claim you are suffering from right now?
> THE DEFENDANT: Once it was a major depression and paranoid schizophrenia.
> THE COURT: You've been diagnosed with both of those conditions?
> THE DEFENDANT: And multiple personalities.
> THE COURT: How long ago was that, sir?
> THE DEFENDANT: About twenty years ago.
> THE COURT: About twenty years ago. Were you taking medication for that?
> THE DEFENDANT: Yes.
> THE COURT: Do you take medication today for that condition?
> THE DEFENDANT: Yes.
> THE COURT: And you have taken the proper medication and the proper doses and amounts today; is that right?

>THE DEFENDANT: Yes, I have.
>THE COURT: And do you feel there's anything about that medication that would affect your understanding of these proceedings?
>THE DEFENDANT: No, I don't think so.
>THE COURT: Are you now under the influence of alcohol or any other drugs that would affect your understanding of these proceedings?
>THE DEFENDANT: No.

(Filing 11, Ex. 3, Plea Proceedings Before District Court on 10/18/99, at 6:14-7:20.)

There is no merit to Taylor's claim that his plea was not entered knowingly, willingly, and intelligently because trial counsel misled him on the viability of an insanity defense and because Taylor was under the influence of mind-altering medication at the time he entered his plea. Therefore, I cannot conclude that Taylor's appellate counsel fell below a standard of objective reasonableness in failing to raise this issue on direct appeal. Thomas v. United States, 951 F.2d 902, 904 (8th Cir. 1991) (counsel not ineffective for failing to raise meritless issue); see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (although U.S. Supreme Court has "not identified with precision exactly what constitutes 'cause' to excuse a procedural default, [the Court has] acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice. . . . Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution.")

Furthermore, Taylor has failed to show prejudice—that is, "a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to [the petitioner]. [Strickland, 466 U.S.] at 690-91. A reasonable probability is one 'sufficient to undermine confidence in the outcome.' Wiggins, 539 U.S. at 534. Merely showing a conceivable effect is not enough." Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir. 2006) (parallel citations omitted). Simply put, if appellate counsel had raised a meritless issue on direct appeal, such as the

11

voluntariness of Taylor's no-contest plea, the end result would have been the same.

Because Taylor has failed to establish that his appellate counsel was constitutionally ineffective in failing to raise the validity of his no-contest plea on direct appeal, Taylor has not shown "cause" to excuse his procedural default of this claim, which must therefore be denied.[5]

### C. *Motion to Withdraw (Claim 4)*

Taylor contends that the district court committed plain or structural error by denying a motion to withdraw filed by his attorney. (Filing 1, at 20-24.) As with Claim 3, above, the State argues that this claim has been procedurally defaulted because it was not raised or argued before the highest court of the State of Nebraska (Filing 24, at 21-22). Taylor replies that his ineffective appellate counsel caused this procedural default by failing to raise the motion-to-withdraw claim in Taylor's direct appeal. (Filing 25, at 2-3.) Using the same legal standards articulated above with regard to Claim 3, I conclude that Taylor has not shown cause and prejudice to excuse his procedural default of this claim.[6]

---

[5]Tayor does not claim actual innocence as a ground to excuse the procedural default of his plea claim. See, e.g., Winfield, 460 F.3d at 1034 (if petitioner fails to "fairly present" his claim to the state courts, and he can no longer present the claim to the state courts, federal court is precluded from considering the claim unless the petitioner can fit himself into one of two exceptions; that is, the petitioner must demonstrate "cause and prejudice" or a "miscarriage of justice" (like "actual innocence") in order to prosecute a claim when that claim has not been, and cannot be, asserted in the state courts).

[6]Taylor presented, and the state court addressed, his claim that appellate counsel was ineffective because counsel failed to raise on direct appeal the issue that "the district court committed plain and/or structural error in denying his motion to withdraw." (Filing 11, Ex. 12, at 7 (Nebraska Court of Appeals Memorandum Opinion affirming lower court's denial of postconviction relief); see also Filing 11,

Taylor hired a law firm to defend him against the five-count information originally filed against him. On April 15, 1999, Taylor's attorney, Jim Miller, filed a motion to withdraw because he had been elected County Attorney for Sarpy County, Nebraska. The motion was granted, and another attorney in Miller's office, Ernest Addison, Sr., appeared on Taylor's behalf. Addison, Sr., then filed a motion to withdraw upon Taylor's request. At the June 29, 1999, hearing on Addison's motion to withdraw, the court noted that trial was scheduled for July 19, 1999, and trial had "been set so many times before"; Addison told the court that he had visited with the defendant three or four times and he was "ready to try the case"; Addison identified the "issue" as Taylor's demand that he be examined—for the third time—by an independent psychiatrist and who would fund the examination; and Taylor attempted to explain the reason behind the motion by stating, "I just don't want him to represent me," "I can't afford to pay him anymore" (although Taylor's attorney told the court he was not requesting any additional money from Taylor), "I just don't feel comfortable," and "I don't think he has contacted any witnesses or anything yet." (Filing 11, Ex. 2, Hearing Before District Court on 6/29/99, at 38-45.)

"Whether to grant a defendant's motion to substitute counsel 'is a matter committed to the sound discretion of the district court,'" United States v. Grady, 997 F.2d 421, 423-24 (8th Cir. 1993) (quoting United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992)). "Last-minute requests to substitute defense counsel are not favored. To warrant such relief, a defendant must show 'a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.'" United States v. Klein, 13 F.3d 1182, 1185 (8th Cir. 1994) (quoting Swinney, 970 F.2d at 499).

The district court was clearly acting within its discretion in denying Taylor's

---

Ex. 20 (Appellate Docket Sheet showing denial by Nebraska Supreme Court of Taylor's Petition for Further Review).)

motion for withdrawal of counsel. The record establishes that Taylor's counsel was ready for trial and had talked with Taylor about the case three to four times, the case had repeatedly been set for trial, and Taylor's reasons for wanting substitute counsel were not based on an irreconcilable conflict or complete breakdown in communication that would mandate substitution of counsel. To the contrary, at Taylor's plea hearing, Addison's son—as opposed to Addison, Sr.—was representing Taylor, and Taylor told the court that he had had a sufficient amount of time to discuss the case with his attorney, he was satisfied with his attorney, and his attorney had properly represented him. (Filing 11, Ex. 3, Plea Proceeding Before District Court, at 14-15.)

Because the district court correctly denied the motion for withdrawal of counsel, I cannot conclude that Taylor's appellate counsel was constitutionally ineffective in failing to raise this meritless issue on direct appeal, or that the result of Taylor's appeal would have been different if the issue had been raised. Thomas, 951 F.2d at 904 (counsel not ineffective for failing to raise meritless issue). Thus, Taylor has not shown "cause" to excuse his procedural default of this claim, and this claim must be denied.

### *D. Ineffective Assistance of Appellate Counsel (Claim 5)*

Finally, Taylor claims that he received ineffective assistance of appellate counsel when his attorney failed to raise the issues discussed above on direct appeal.

When a state court [7] has adjudicated a habeas petitioner's claim on the merits,

---

[7]The Nebraska Court of Appeals considered and rejected this argument in Taylor's appeal from the district court's denial of postconviction relief. (Filing 11, Ex. 12, Nebraska Court of Appeals Memorandum Opinion affirming lower court's denial of postconviction relief); see also Filing 11, Ex. 20 (Appellate Docket Sheet showing denial by Nebraska Supreme Court of Taylor's Petition for Further

14

there is a very limited and extremely deferential standard of review both as to the facts and the law. See 28 U.S.C. § 2254(d). Specifically, a federal court may not grant a writ of habeas corpus unless the state court's legal conclusion "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Within the meaning of 28 U.S.C. § 2254(d)(1), "[a] state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). Similarly, "[a] state-court decision involves an unreasonable application of . . . clearly established precedents if the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." Id.

Here, the Nebraska Court of Appeals employed the proper legal analysis, as set forth in Strickland v. Washington, 466 U.S. 668 (1984), in determining that Taylor's appellate counsel was not constitutionally ineffective for failing to raise the issues discussed above on direct appeal and in concluding that Taylor was not prejudiced by the actions or inactions of his attorney. (Filing 11, Ex. 12, at 6-14.) Because the state court's analysis is not contrary to, and does not unreasonably apply, clearly established federal law, I must deny this claim.

### III.  CONCLUSION

Taylor's speedy trial claims (Claims 1 & 2) are denied on the merits; his plea and motion-to-withdraw claims (Claims 3 & 4) are procedurally defaulted; and Taylor's claim regarding ineffective assistance of his appellate counsel (Claim 5) is denied on the merits. Hence, I shall deny Taylor's Petition for Writ of Habeas Corpus

---

Review).)

filed pursuant to 28 U.S.C. § 2254.

IT IS ORDERED:

1. Petitioner's Petition for Writ of Habeas Corpus (filing 1) is denied in its entirety, and this case is dismissed with prejudice;

2. Judgment shall be entered by separate document.

March 15, 2007.

BY THE COURT:
s/ *Richard G. Kopf*
United States District Court